**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN**

**DANIEL MCGOUGH,**
Plaintiff,
v.

**LINCOLN CONSOLIDATED SCHOOLS, BRICK ELEMENTARY, PAULA ROBINETTE (Director of Human Resources), CASSANDRA COKER (Principal of Brick Elementary), PAM FLUCKS (Lead Secretary of Brick Elementary),**
Defendants.

**Civil Action No. 24-12580**

---

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**

---

**COMPLAINT**

**JURISDICTION AND VENUE**

1. Plaintiff alleges that this Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including but not limited to 42 U.S.C. §§ 1983, 1985, and 1986.

2. Plaintiff alleges that venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as the events giving rise to this action occurred within this district.

---

**PARTIES**

3. Plaintiff, Daniel McGough, is domiciled at 1173 Hunter Ave, Ypsilanti, MI 48197, and is the father of the child.

4. Defendant, Lincoln Consolidated Schools, is alleged to be a school district organized under the laws of the State of Michigan, with its principal office located at 7425 Willis Rd, Ypsilanti, MI 48197.

5. Defendant, Brick Elementary, is alleged to be a public school within the Lincoln Consolidated Schools district, located at 8970 Whittaker Rd, Ypsilanti, MI 48197.

6. Defendant, Paula Robinette, is alleged to be the Director of Human Resources for Lincoln Consolidated Schools, and is sued in both her individual and official capacities.

7. Defendant, Cassandra Coker, is alleged to be the Principal of Brick Elementary, and is sued in both her individual and official capacities.

8. Defendant, Pam Flucks, is alleged to be the Lead Secretary at Brick Elementary, and is sued in both her individual and official capacities.

---

## FACTUAL ALLEGATIONS

9. Plaintiff alleges that on September 27, 2024, at 9:30 AM, he attempted to sign out his child from Brick Elementary School.

10. Plaintiff alleges that the school had already received a copy of his custody order, which had been provided to them by the mother of his child, Alyssa McCloskey.

11. Plaintiff alleges that despite having the custody order on file, the school's administration, specifically Defendant Casandra Coker, informed him that he could not sign out the child without prior approval from the mother.

12. Plaintiff alleges that this policy of requiring the mother's approval is an unwarranted interference with his custodial rights, as no such condition exists in his custody order.

13. Plaintiff alleges that custodial decisions, including decisions regarding school pick-up, should be made by a custodial judge and not the school's administration.

14. Plaintiff alleges that he sought to sign out the child for legitimate purposes, such as a doctor's appointment and a family wedding, but was again told he needed approval from the mother.

15. Plaintiff alleges that Defendant Pam Flucks, in her capacity as the lead secretary, played a central role in delaying the process. While he waited, she informed him that it would "be a while" before the child could be retrieved, which Plaintiff believes was an intentional delay while the staff reviewed his custody order.

16. Plaintiff alleges that during this delay, Defendant Flucks went to retrieve the principal, Defendant Coker, and they reviewed Plaintiff's custody order before allowing him to sign out his child.

17. Plaintiff alleges that while waiting, another secretary approached him, asking why he was signing the child out early, taking notes on his response.

18. Plaintiff alleges that it was a 20-minute wait before Defendant Flucks and Defendant Coker approached Plaintiff with his custody order.

19. Plaintiff alleges that Defendant Coker repeatedly asked if he had an "updated custody agreement" and stated that without one, they would need the mother's permission. She asked this three times despite the fact that the existing custody order did not impose restrictions on when Plaintiff could pick up his child from school.

20. Plaintiff alleges that during a 2-3 minute conversation in the office, he explained that he is the child's legal father, and that the child was not at risk. Despite this, Defendant Coker pulled out his custody order and stated, "It says here you get him Fridays after school, so you're going to have to wait until after school," completely ignoring Plaintiff's legal rights and insisting that they still needed the mother's approval.

21. Plaintiff informed the school administration of the need to contact the child's mother.

22. Plaintiff departed from the school premises at approximately 9:45 a.m.

23. At or around 11:00 a.m., Plaintiff called the school and was transferred to Defendant Coker.

24. Plaintiff inquired of Defendant Coker whether she had successfully reached the child's mother.

25. Defendant Coker confirmed to Plaintiff that she had contacted the child's mother and received her approval.

26. Plaintiff alleges that due to this back-and-forth, and the school's refusal to release the child, he was required to sign the child out twice, causing further delays.

27. Plaintiff alleges that these unnecessary delays caused him and his child to miss important portions of a family wedding, as they were not able to leave the school until almost 12:00 PM.

28. Plaintiff alleges that on another occasion, when he came to sign out the child a few minutes early, Defendant Flucks again overstepped her role by quickly contacting Human Resources, asking if there were any recent legal custody filings involving Plaintiff. Plaintiff alleges that he overheard this conversation, despite Defendant Flucks attempting to be discreet, and that she had made similar calls before.

29. Plaintiff alleges that nowhere in his custody order does it place restrictions on when he may sign out the child from school, nor does it indicate that the child is unsafe

with him. These actions demonstrate that Defendant Flucks and the school staff were overstepping their authority.

30. Plaintiff further alleges that it is common practice for Lincoln Consolidated Schools to review custody orders for many parents, yet the treatment he experienced was distinct and discriminatory. Plaintiff has not heard of any other parents being subject to the same excessive delays, scrutiny, or restrictions.

31. Plaintiff alleges that these discriminatory actions were likely influenced by information provided to the school by the mother of his child, which further highlights the school's improper involvement in family matters.

32. Plaintiff alleges that the school's actions, led by Defendant Flucks, have unjustly portrayed him as a potential threat, undermined his relationship with his child, and caused him significant emotional distress and frustration.

33. Plaintiff alleges that he has attempted to resolve these issues directly with the school for over two years but continues to face discriminatory practices that deny him equal protection and due process rights guaranteed under the Fourteenth Amendment.

---

**ADDITIONAL ALLEGATIONS UNDER FEDERAL LAW**

**Count I: Violation of Civil Rights Under 42 U.S.C. § 1983**

34. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

35. Plaintiff alleges that the actions of the Defendants, acting under color of state law, deprived him of rights, privileges, or immunities secured by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983.

36. Specifically, the Defendants' actions, including the delay in allowing Plaintiff to pick up his child and the discriminatory treatment, violated Plaintiff's Fourteenth Amendment rights to due process and equal protection.

37. By failing to follow the custody order and imposing conditions that were not legally required, Defendants acted under color of state law to unlawfully interfere with Plaintiff's custodial rights, a protected liberty interest.

38. These actions constitute a deprivation of Plaintiff's parental rights without due process of law.

**Count II: Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1985(3)**

39. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

40. Plaintiff alleges that Defendants, including school administration and staff, conspired to deprive him of his civil rights by intentionally discriminating against him based on his status as a father and custodial parent, in violation of 42 U.S.C. § 1985(3).

41. The conspiratorial actions of Defendants, including repeatedly delaying his ability to pick up his child, contacting the mother unnecessarily, and subjecting him to disparate treatment not experienced by other parents, demonstrate a collusive scheme designed to interfere with Plaintiff's custodial rights and deny him equal protection under the law.

42. Defendants' actions were motivated, at least in part, by discriminatory animus, and the disparate treatment of Plaintiff was directly influenced by the improper involvement of the child's mother and information provided by her.

**Count III: Neglect to Prevent Civil Rights Violation Under 42 U.S.C. § 1986**

43. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

44. Plaintiff alleges that Defendant Paula Robinette, as Director of Human Resources, and other officials at Lincoln Consolidated Schools had knowledge of the wrongful acts being committed by their subordinates, as they were responsible for reviewing and ensuring compliance with custody orders and parental rights.

45. Despite this knowledge, Defendant Robinette and other officials had the power to prevent these violations but neglected or refused to take appropriate actions, in violation of 42 U.S.C. § 1986.

46. As a result of this neglect, Plaintiff's rights were violated, causing him emotional distress and continued interference with his relationship with his child.

**Count IV: Discriminatory Practices in Violation of the Equal Protection Clause of the Fourteenth Amendment**

47. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

48. Plaintiff alleges that the actions of Defendants, including the undue scrutiny and delays in allowing him to sign out his child, violated the Equal Protection Clause of the Fourteenth Amendment.

49. The school's treatment of Plaintiff was disparate from that of other parents, who were not subjected to the same level of scrutiny or delay, particularly in cases where both parents had legal custodial rights.

50. This discriminatory conduct was based on improper assumptions about Plaintiff's role as a father, constituting sex-based discrimination and a denial of his right to be treated equally under the law.

**State Law Claims (if applicable)**

51. Plaintiff reserves the right to assert any relevant state law claims arising from these facts, including claims for intentional infliction of emotional distress, negligence, or discrimination under Michigan law.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, awarding the following relief:

1. A declaration that the Defendants' actions violated Plaintiff's rights under 42 U.S.C. §§ 1983, 1985(3), 1986, and the Fourteenth Amendment to the United States Constitution.

2. An order enjoining Defendants from further interfering with Plaintiff's custodial rights.

3. Compensatory and punitive damages in an amount to be determined by the Court.

4. An award of Plaintiff's reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

5. Any other relief the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

---

Respectfully submitted,
**Daniel McGough**
P O Box 970081
Ypsilanti, MI 00000
Phone: 313-348-0459
Email: dryan616@icloud.com
Pro Se Plaintiff