UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL R. McGOUGH,

              Plaintiff,                          Case No. 24-12580
                                                  District Judge Judith Levy
v.                                                Magistrate Judge Anthony P. Patti

LINCOLN CONSOLIDATED
SCHOOLS, et al.,

              Defendants.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS TO DISMISS (ECF NO. 18) AND ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT (ECF NO. 25)

## I.    ORDER AND RECOMMENDATION:

Before the Court are two pending motions which have been set for hearing on Wednesday, August 13, 2025.  Having reviewed the briefs, I concluded that a hearing is unnecessary, and I ordered their submission and determination without oral argument.  E.D. Mich. LR 7.1(f)(2).  For the reasons discussed below, the Court should **GRANT** Defendants' motion to dismiss. (ECF No. 18.)

Further, Plaintiff's motion for leave to file an amended complaint (ECF No. 25) is **DENIED**.

## II.   REPORT

### A.   Background

On October 1, 2024, Plaintiff Daniel McGough initiated this action against Lincoln Consolidated Schools, Brick Elementary, Paula Robinette (Director of Human Resources), Cassandra Coker (Principal of Brick Elementary).  (ECF No. 1.)  Plaintiff, proceeding *in pro per*, alleged that his Fourteenth Amendment rights were violated when, on September 27, 2024, Plaintiff attempted to sign out his minor son from school, but the school refused without prior permission from the son's mother.  (ECF No. 1, PageID.1.)[1]  He also alleged that on a separate occasion, he "stopped by to bring food" to his son and "learned that" his son "had been told to stand in the corner of the office when the Plaintiff was not present.  As a result," his son was so upset that he refused to accept the lunch that he had previously requested from the Plaintiff.".  (ECF No. 1, PageID.2, ¶ 12.)  Plaintiff sought compensatory and punitive damages, as well as injunctive relief.  (*Id.*, Prayer for Relief)

On October 22, 2024, Plaintiff filed a "Corrected Complaint" against the same four Defendants, but adding Pam Flucks, the Lead Secretary of Brick Elementary.  (ECF No. 10.)  The "Corrected Complaint," which the Court will refer to as his First Amended Complaint ("FAC"), does not directly name his

---

[1] Plaintiff's initial complaint is under seal due to his naming his minor son.

minor son and so it was not placed under seal.  The FAC was filed as of right

pursuant to Fed. R. Civ. P. 15(a) and is now the operative pleading.

Plaintiff's FAC sets forth four counts based on the events of September 27,

2024.  He states that at 9:30 a.m. he attempted to get his child from Brick

Elementary School, and was told that he could not sign him out without prior

approval from the mother.  (ECF No. 10, PageID.27.)  According to Plaintiff, the

school had a custody order on file and the custody order did not require prior

approval from the mother before signing the child out.  (*Id.*)  The school secretary,

Defendant Flucks, told Plaintiff that it would "be awhile" before the child was

retrieved, "which Plaintiff believes was an intentional delay while the staff

reviewed his custody order."  (*Id.*)  Plaintiff further asserts that "that during this

delay, Defendant Flucks went to retrieve the principal, Defendant Coker, and they

reviewed Plaintiff's custody order before allowing him to sign out his child."  (*Id.*)

After a 20-minute wait, Defendants Flucks and Coker approached Plaintiff with the

custody order, and told him, "It says here you get him Fridays after school, so

you're going to have to wait until after school."  (ECF No. 10, PageID.28.)  The

FAC asserts that Defendant Coker asked three times if Plaintiff had an updated

custody order and informed him that, if not, they would need the mother's

approval.  (*Id.*)  Plaintiff informed them to call the mother and left the school at

9:45 a.m.

3

At around 11:00 a.m., Plaintiff called the school and asked if they had reached the mother.  Defendant Coker confirmed with Plaintiff that she had reached the mother and received approval.  (*Id.*)  Plaintiff alleges that "these unnecessary delays caused him and his child to miss important portions of a family wedding, as they were not able to leave the school until almost 12:00 p.m."  (*Id.*)

Plaintiff states that on another occasion, when he came to the school to sign the child out a few minutes early, Defendant Flucks "overstepped her role by quickly contacting Human Resources, asking if there were any recent legal custody filings involving Plaintiff."  (*Id*.)  Plaintiff contends that he heard this conversation "despite Defendant Flucks attempting to be discreet, and that she had made similar calls before."  (*Id.*)

The FAC indicates that it is "common practice for Lincoln Consolidated Schools to review custody orders for many parents, yet the treatment he experienced was distinct and discriminatory."  (ECF No. 10, PageID.29.)  Plaintiff "has not heard of any other parents being subject to the same excessive delays, scrutiny, or restrictions."  (*Id.*)  Plaintiff alleges that "these discriminatory actions were likely influenced by information provided to the school by the mother of his child, which further highlights the school's improper involvement in family matters."  (*Id.*)  He claims that "the school's actions, led by Defendant Fluck, have

4

unjustly portrayed him as a potential threat, undermined his relationship with his child, and caused him significant emotional distress and frustration."  (*Id.*)

The FAC asserts four counts: (1) Count I, a claim under 42 U.S.C. § 1983, for interfering with Plaintiff's parental rights without due process of law and violating his rights to due process and equal protection of the Fourteenth Amendment; (2) Count II, a claim for conspiracy to violate Plaintiff's civil rights under 42 U.S.C. § 1985(3), claiming that Defendants' discriminatory animus (influenced by the child's mother) motivated their conspiratorial actions to repeatedly delay "his ability to pick up his child, contacting the mother unnecessarily, and subjecting him to disparate treatment not experienced by other parents" thus demonstrating "a collusive scheme designed to interfere with his custodial rights"; (3)  Count III, neglect by Defendant Paula Robinette and other officials at Lincoln Consolidated Schools, for knowing of the wrongful actions committed by their subordinates but neglecting or refusing to take appropriate actions, in violation of 42 U.S.C. § 1986; and, (4) Count IV, a claim for "discriminatory practices in violation of the Equal Protection Clause of the Fourteenth Amendment," in which he alleges that the undue scrutiny and delay he experienced were based on "improper assumptions about Plaintiff's role as a

father, constituting sex-based discrimination and a denial of his right to be treated equally under the law." (ECF No. 10, PageID.30-31.)[2]

On January 3, 2025, Defendants filed a motion to dismiss the complaint, which has been fully briefed. (ECF Nos. 18, 24, 27.) On the same day that he filed his response to the motion to dismiss, Plaintiff filed a motion to amend the FAC, seeking to add as defendants the child's mother and the state court judge who issued the custody order.

This case has been assigned to the Honorable Judith E. Levy, who referred the matter to me "for all pretrial proceedings, including a hearing and determination of all non−dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B)." (ECF No. 21, PageID.107.)

---

[2] Plaintiff's FAC also includes a section titled "State Law Claims," which is not enumerated as a Count, but states "Plaintiff reserves the right to assert any relevant state law claims arising from these facts, including claims for intentional infliction of emotional distress, negligence, or discrimination under Michigan law." (ECF No. 10, PageID.31.) The Court should not construe this as any pleaded claims under state law, but an unnecessary attempt to "place-hold" the right to potentially add them later, and are therefore not part of the analysis of Defendants' motion to dismiss. In any case, in the event that the Court agrees that all federal claims should be dismissed, yet believes there are any state law claims actually alleged, I recommend refraining from any exercise of supplemental jurisdiction.

B.     **Standard**

1.     **Motion to Dismiss** [3]

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts

must "construe the complaint in the light most favorable to the plaintiff and accept

all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible

claim need not contain "detailed factual allegations" but must contain more than

"labels and conclusions" or a "formulaic recitation of the elements of a cause of

action").  Facial plausibility is established "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an

---

[3] Defendants submit their motion as a "motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(c)."  Rule 12(c), however, is not for dismissal but for judgment on the pleadings.  *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.").  It is essentially a distinction without a difference as the standard of review for a motion for judgment on the pleadings for failure to state a claim upon which relief can be granted under Rule 12(b)(6) is the same as that which should be undertaken when evaluating a motion for judgment on the pleadings pursuant to Rule 12(c). *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).  Because the motion is titled and docketed as a motion to dismiss, I will analyze it under Rule 12(b)(6).

inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

### 2. Motion to Amend

Under Fed. R. Civ. P. 15(a), a party may amend its pleadings at this stage of the proceedings only after obtaining leave of court. The Rule provides that the court should freely give leave for a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Nevertheless, leave to amend 'should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'" *Carson v.*

*U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (quoting

*Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)).

### C.   Discussion

#### 1.   Motion to Dismiss

##### a.  Count 1: Fourteenth Amendment

Under Count I, Plaintiff alleges that Defendants interfered with Plaintiff's

parental rights in violation of the Fourteenth Amendment when they consulted the

custody agreement and refused to release his son without permission from the

child's mother.  Defendants argue that Plaintiff has failed to state a constitutional

claim under these facts.  The Court should agree.

Plaintiff brings this claim pursuant to 42 U.S.C. § 1983.  "'Section 1983

provides a cause of action against any person who, under color of state law,

deprives an individual of any right, privilege, or immunity secured by the

Constitution and federal law.'"  *Regets v. City of Plymouth*, 568 F. App'x 380, 386

(6th Cir. 2014) (quoting *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996)).   A

Fourteenth Amendment procedural due process claim, which appears to be alleged

here, depends upon the existence of a constitutionally cognizable liberty or

property interest with which the state has interfered.  *Kentucky Dep't of Corr. v.*

*Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652,

656 (6th Cir. 1993).  Thus, to establish a procedural due process violation, a

plaintiff must prove that: (1) he was deprived of a protected liberty interest or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson*, 209 F. App'x 456, 458 (6th Cir. 2006).

Defendants cite two cases for the proposition that since they relied on a custody order, they did not deprive Plaintiff of his custody rights. In *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 729 (6th Cir. 2011), in the context of a substantive due process claim against a social worker for her allegedly false statements to the juvenile court, the Sixth Circuit stated, "to the extent that [the parent] suffered a deprivation of his fundamental right to family integrity, that deprivation was perpetrated by the juvenile court, not by [the social worker]." The Sixth Circuit further stated, "Because the juvenile court has the ultimate decision-making power with respect to placement and custody, it alone could deprive Pittman of his fundamental right." *Id.; see also Kolley v. Adult Protective Servs.,* 725 F.3d 581, 586 (6th Cir. 2013) (rejecting due process claim against a social worker because the Michigan courts "have the ultimate decision-making power on custody and guardian" decisions). Although these cases are not directly on point, the logic is sound. It is the Michigan courts who are tasked with making custody decisions. Where, as here, a school official relies on a custody

order in refusing to release a child to a parent who does not have legal custody and/or the school requires approval of the parent with legal custody, it is not the school that has deprived the parent of their due process rights.

Defendants have attached to their motion a copy of the "Stipulated Order for Change of Legal Custody," which is both referenced in Plaintiff's complaint, and a matter of public record, and therefore proper to consider under Rule 12(b)(6). *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001)). ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."). The custody order provides that the child's mother "shall have sole legal custody of the party's minor child . . . pending further order of the court." (ECF No. 18-3, PageID.95.) The child's father was allocated "parenting time" for three weekends per month, starting at Friday "after school[.]" (ECF No. 18-3, PageID.95-96.) "All other parenting time [was] awarded to [the mother]." (*Id.* at PageID.95.)

Despite Plaintiff's argument that the custody order did not require approval from the mother for him to pick up his son, under the facts as asserted by Plaintiff and as confirmed by the custody order, Defendants relied on a custody order that

11

stated he did not have parenting rights until after school on Fridays, and that the mother had "sole legal custody."  Thus, at the time Plaintiff attempted to pick up his child, which was outside of his designated parenting time, the child was in the legal custody of the mother and also squarely within her parenting time.

Plaintiff's complaint clearly pleads that he attempted to pick up his child at 9:30 am, and the custody order provided that Plaintiff did not have parenting rights until after school on Fridays.  Indeed, under Plaintiff's allegations, Defendants consulted the custody order before releasing the child, found that the custody order did not give "parenting time" to the father until after school on Fridays, asked Plaintiff if he had an updated custody order and, when he did not, allowed the child to be released only with permission from the parent who had "sole legal custody "and parenting rights at the time Plaintiff attempted to pick up his son.  Under these facts, Defendants' reliance on a custody order did not violate Plaintiff's due process rights.  Indeed, Defendants, *in loco parentis* at the time in question and caught in the middle of a legal dispute between the child's parents, can hardly be faulted for consulting a court order (or even contacting his mother) to make sure that they understood to which parent they were able to release him.  Undoubtedly, had they released the child in violation of the court order, they may well be facing a lawsuit from his mother.

Plaintiff has failed to state a claim for violation of the Fourteenth Amendment and Defendants' motion should be granted as to this count.

### b.    Count II: Federal Conspiracy Claim

For the same reason, the Court should dismiss Plaintiff's Count II.  Under Count II, Plaintiff brings a claim for conspiracy to violate Plaintiff's civil rights under 42 U.S.C. § 1983, claiming that Defendants' discriminatory animus (influenced by the child's mother) motivated their conspiratorial actions to repeatedly delay his ability to pick up his child, contact the mother unnecessarily, and subject him to disparate treatment not experienced by other parents.

To bring a claim for a civil conspiracy Plaintiff must allege:

> "two or more persons . . . conspire[d]" (2) "for the purpose of depriving . . . [the claimant] of the equal protection of the laws" due to racial or class-based animus and that the conspirators (3) committed an act "in furtherance of the object of such conspiracy" (4) that "injured" the claimant. 42 U.S.C. § 1985(3); *see United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).

*Maxwell v. Dodd*, 662 F.3d 418, 422 (6th Cir. 2011).  Here, because the alleged conspiracy was to abide by the custody order on file with the school, Plaintiff has not stated a claim for a conspiracy to deprive Plaintiff of his constitutional rights. *See Kennedy v. Fields*, No. 23-11949, 2024 WL 4057462, at *3 (E.D. Mich. May 14, 2024) (Ivy, M.J.) ("Without a constitutional violation, there can be no conspiracy claim."); *see also Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) ("As it found no constitutional violation, the district court also

13

dismissed Radvansky's conspiracy claim, brought under 42 U.S.C. § 1985(3) and § 1986.").

Moreover, as Defendants point out, this claim is also barred by the intra-corporate conspiracy doctrine.  The intra-corporate conspiracy doctrine states that "if 'all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019) (*quoting Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–40 (6th Cir. 1994)). The doctrine applies to both claims under §§ 1983 and 1985(3).  *Buckley v. City of Westland*, No. 2:20-CV-11315, 2021 WL 2662255, at *4 (E.D. Mich. June 29, 2021) (Murphy, J.).  Based on the allegations in the complaint, all of the named Defendants are part of the same collective entity, Lincoln Consolidated Schools, and all of the named Defendants were acting in their capacity as employees of that entity.  As such, Plaintiff has not stated a claim on which relief can be granted for conspiracy under § 1985.

### c.    Count III: "Neglect to Prevent"

Under Count III, Plaintiff alleges that Defendant Paula Robinette, the Director of Human Resources, and other officials at Lincoln Consolidated Schools, knew of the wrongful actions committed by their subordinates but neglected or refused to take appropriate actions, in violation of 42 U.S.C. § 1986.

The Court should dismiss this claim as well because "[w]here a plaintiff has no § 1985 claim he also has no § 1986 claim." *Raudenbush v. Monroe Cnty., Tennessee*, No. 3:11-CV-00625, 2019 WL 1429533, at *8 (E.D. Tenn. Mar. 29, 2019). Because Plaintiff has not stated a valid claim under § 1985, his § 1986 claim necessarily fails. *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 803 F. Supp. 1251, 1260 (E.D. Mich. 1992) (Edmunds, J.) ("Without a violation of section 1985, there can be no violation of section 1986.") (citing *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980); *German v. Killeen*, 495 F.Supp. 822, 829–30 (E.D. Mich.1980)).

### d.     Count IV: Equal Protection Claim

Under Count IV, Plaintiff brings a claim for "discriminatory practices in violation of the Equal Protection Clause of the Fourteenth Amendment" in which he alleges that the undue scrutiny and delay he experienced were based on "improper assumptions about Plaintiff's role as a father, constituting sex-based discrimination and a denial of his right to be treated equally under the law." (ECF No. 10, PageID.31.)

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "This provision thus requires that all similarly situated individuals be treated similarly." *PHN Motors, LLC v. Medina*

*Twp.*, 498 F. App'x 540, 548 (6th Cir. 2012) (citing *City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).  "The Equal Protection Clause prohibits "governmental discrimination that either (1) burdens a fundamental right, (2) targets a suspect class, or (3) intentionally treats one differently from others similarly situated without any rational basis for the difference."  *Fouts v. Warren City Council*, 97 F.4th 459, 470 (6th Cir. 2024). "The clause is 'essentially a direction that all persons similarly situated should be treated alike.'"  *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 864 (6th Cir. 2012) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

Plaintiff's Equal Protection claim fails because his FAC does not adequately allege that he was treated differently than those similarly situated.  Plaintiff appears to allege that he was treated differently than cases where "both parents had legal custodial rights" (ECF No. 10, PageID.31.)  Plaintiff's conclusory statement is not enough to state a claim for violation of the Equal Protection Clause. A plaintiff bringing an equal protection claim must be "similarly situated" to a comparator in "all relevant respects."  *Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (*quoting United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011).  Plaintiff alleges that "it is common practice for Lincoln Consolidated Schools to review custody orders for many parents, yet the treatment he experienced was distinct and

16

discriminatory," and that "Plaintiff *has not heard* of any other parents being subject to the same excessive delays, scrutiny, or restrictions."  (ECF No. 10, PageID.29 (emphasis added).)  But this is a far cry from allegations sufficient to support an Equal Protection violation.  Plaintiff does not allege that he was treated differently than someone similarly situated in all relevant respects which, most notably, would require an allegation that he was treated differently *than others who were trying to pick up their children at times not consistent with their custody orders.*

Because Plaintiff's allegations are insufficient to state a claim for a violation of the Equal Protection Clause, the Court should grant Defendants' motion on this count.

### e.  Qualified Immunity

Even if the Court were to disagree and find that Plaintiff had stated a claim with respect to one or all of his counts, Defendants' motion should still be granted on their alternative argument that they are entitled to qualified immunity.  (ECF No. 18, PageID.87.)

The Court conducts a two-step analysis in assessing qualified immunity.  First, the Court determines whether "the violation of a constitutional right has occurred" and second, whether the "constitutional right at issue was clearly established at the time of defendant's alleged misconduct."  *Grawey v. Drury*, 567

17

F.3d 302, 309 (6th Cir. 2009).  During the analysis, the Court must view the facts

in the light most favorable to the plaintiff.  *Id.*  "Unless the plaintiff's allegations

state a claim of violation of clearly established law, a defendant pleading qualified

immunity is entitled to dismissal before the commencement of discovery."

*Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) (citing *Harlow v. Fitzgerald,* 457

U.S. 800, 818 (1982) (observing that "bare allegations… should not suffice to

subject government officials either to the costs of trial or to the burdens of broad-

reaching discovery).  "Plaintiff is thus obliged to plead facts that, viewed in the

light most favorable to him, make out a violation of a constitutional right so clearly

established in a particularized sense that a reasonable [defendant] confronted with

the same situation would have known that his conduct violated that right."

*Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)

Here, for the reasons stated above, the Court should find that Plaintiff has

not alleged any constitutional violation.  But even if there were a violation alleged,

Plaintiff could not withstand the second inquiry, whether the right at issue was

clearly established at the time of the alleged misconduct.  A reasonable school

official would have no way of knowing that following the dictates of a custody

order − or even just taking the time to be sure of compliance with such an order  −

would violate Plaintiff's constitutional rights.  Accordingly, even if Plaintiff had

stated a claim with respect to any of his four counts, Defendants are nonetheless entitled to qualified immunity.

For all of these reasons, the Court should **GRANT** Defendants' motion to dismiss.[4] (ECF No. 18.)

### 2.     Motion to Amend

Plaintiff has also filed a motion to amend, in which he seeks to file a third complaint, which I will refer to as the Second Amended Complaint ("SAC"). Plaintiff's motion does not attach a proposed pleading, as is required by the local rules. *See* E.D. Mich. LR 15.1 ("A party who moves to amend a pleading shall attach the proposed amended pleading to the motion.")

Plaintiff seeks to amend his pleading to add as defendants the mother of his child, Alyssa McCloskey, and Judge Patrick Conlin, Jr., who presided over his custody matters.  (ECF No. 25, PageID.118.)  He alleges McCloskey "actively collaborated with the school to prevent Plaintiff from accessing his child, despite

---

[4] The Court should reject as frivolous Plaintiff's procedural arguments raised in his response brief.  Defendants have provided evidence that they sought concurrence before filing their motion to dismiss, as is required by E.D. Mich. LR 7.1.  (*See* ECF No. 27-1, PageID.162.)  And, in any event, Plaintiff demonstrably did not concur in the motion.  Nor is there anything improper in the filing or timing of Defendants' motion under Rule 12.  Finally, the motion was not brought under Fed. R. Civ. P. 56, and it relies on Plaintiff's allegations in his pleading.  Plaintiff has not provided a basis to proceed to discovery, and under the facts asserted in the complaint Defendants are entitled to dismissal under Rule 12(b)(6), or judgment on the pleadings under Rule 12(c).  *See* fn.3, *supra.*

19

the absence of any legal order restricting Plaintiff's parental rights at the time."
(ECF No. 25, PageID.117.)  He further alleges that Judge Conlin "improperly
issued and upheld orders suspending Plaintiff's rights without any evidentiary
basis or due process, effectively enabling McCloskey and the school to continue
violating Plaintiff's rights."  (ECF No. 25, PageID.118.)

Because Plaintiff has already amended his complaint once as of right under
Rule 15(a)(1), he must proceed under Rule 15(a)(2) which states that "[i]n all other
cases, a party may amend its pleading only with the opposing party's written
consent or the court's leave."  As Defendants do not consent to the amendment,
Plaintiff can amend only by the Court's leave, which should be given freely when
justice so requires. Fed. R. Civ. P. 15(a)(2).  Rule 15(a) supports the "principle that
cases should be tried on their merits" and not on technicalities, and thus "assumes
'a liberal policy of permitting amendments.'" *Inge v. Rock Fin. Corp.*, 388 F.3d
930, 937 (6th Cir. 2004) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th
Cir. 1986)).  In determining whether to grant the amendment, the Court considers
the factors set forth in *Foman v. Davis*, 371 U.S. 178, 182 (1962) – "undue delay,
bad faith or dilatory motive on the part of the movant, repeated failure to cure
deficiencies by amendments previously allowed, undue prejudice to the opposing
party by virtue of allowance of the amendment, futility of amendment, etc."  An
amendment is futile if it could not withstand a motion to dismiss. *Thikol Corp. v.*

*Dept. of Treasury*, 987 F.2nd 376, 383 (6th Cir. 1993).  Plaintiff's motion to amend

will be denied because adding either of the two proposed defendants would be

futile.

Plaintiff's claims against McCloskey would be futile for two reasons.  First,

any claims brought under 42 U.S.C. § 1983 would be futile because § 1983

requires the defendant to be a state actor acting "under color of state law."  *Regets*,

568 F. App'x 380.  Moreover, to the extent Plaintiff could bring a claim under §

1985, such claim would be futile because, as discussed above, the alleged

conspiracy to enforce a custody order does not allege a violation of Plaintiff's

constitutional rights and Plaintiff has therefore not stated a claim for a conspiracy

to deprive Plaintiff of his constitutional rights.  *See Kennedy*, 2024 WL 4057462,

at * ("Without a constitutional violation, there can be no conspiracy claim."); *see*

*also Radvansky*, 395 F.3d at 314 ("As it found no constitutional violation, the

district court also dismissed Radvansky's conspiracy claim, brought under 42

U.S.C. § 1985(3) and § 1986.").  With all of the existing defendants dismissed, and

with Judge Conlin being immune from suit, as explained *infra*., McCloskey alone

cannot form a "conspiracy of one." *See* "Civil Conspiracy," *Black's Law*

*Dictionary* (10th ed.) at 375 ("An agreement between *two or more persons* to

commit an unlawful act….") (emphasis added).

Furthermore, any claim against Judge Conlin would be barred by the doctrine of judicial immunity. Judges have absolute immunity from lawsuits for acts performed in their judicial capacity. *Bradley v. Fisher*, 80 U.S. 335, 351 (1871); *Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012). Indeed, "[a] long line of [the Supreme] Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id*. at 11 (citations omitted). Plaintiff's claims against Judge Conlin relate to actions performed in his judicial capacity as presiding judge in Plaintiff's family court custody proceedings. As such, Judge Conlin is entitled to absolute immunity and any claims against him would be futile.

Plaintiff's proposed amendments could not withstand a motion to dismiss, and his motion to amend is **DENIED**.

### D.   Conclusion

For the reasons discussed below, Plaintiff's motion for leave to file an amended complaint (ECF No. 25) is **DENIED**.

Further, the Court should **GRANT** Defendants' motion to dismiss. (ECF No. 18.)

## III.    PROCEDURE ON OBJECTIONS

### A.    Report and Recommendation

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

**B.     Order on motion to amend**

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

**IT IS SO ORDERED.**

Dated:  August 19, 2025

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE